### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JULIA MORGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-21-524-STE |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case for further proceedings consistent with this Order.

### I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 19-27). The Appeals Council denied Plaintiff's

request for review. (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ applied only the first two steps of the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity between February 6, 2017—the amended onset date—through December 31, 2018—the date last insured. (TR. 22). At step two, the ALJ determined Ms. Morgan suffered from numerous medically determinable impairments, but that none of them were severe. (TR. 21-22). Thus, at step two, the ALJ ended his evaluation and concluded that Ms. Morgan was not disabled. (TR. 27).

## III.   ISSUES PRESENTED

On appeal, Ms. Morgan alleges that the ALJ's step-two finding is not supported by substantial evidence. She alleges that, in fact, she met her burden of proof at step two by demonstrating that she suffers from several pain-producing impairments that significantly affect her ability to function. She further states the ALJ "mischaracterized" the opinions of two agency physicians who reviewed the medical records, and she contends the ALJ failed in his duty to develop the record.

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard,

a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.    STEP-TWO ANALYSIS

At step two, the agency determines whether the claimant's alleged impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment or combination of impairments is "severe," within the meaning of the social security regulations, if it "significantly limits her ability to do basic work activities." *Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007) (internal citations omitted).

The SSA regulation that governs the determination of severity at step two is designed to screen out only those claimants with "impairments of a minimal nature which could never prevent a person from working." SSR 85-28, 1985 WL 56856, at *2 (1985) (internal citation and quotation omitted); *see Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring) (noting that Step two is designed "to weed out at an early

3

stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.").

Given the purpose behind step two, "case law prescribes a very limited role for step two analysis." *Lee v. Barnhart*, 117 F. App'x 674, 676–77 (10th Cir. 2004) (unpublished). At step two, the claimant has the burden of proof to show that he or she has an impairment severe enough to interfere with his or her ability to work. *Bowen*, 482 U.S. at 146–54. The burden of proof at step two requires only a *de minimis* showing that an impairment is severe, *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (internal citation omitted); *see also Lee*, 117 F. App'x at 677 ("a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis). A claimant must provide objective evidence in the form of signs or laboratory findings as defined above "'sufficient to suggest a reasonable possibility that a severe impairment exists.'" *Bryant v. Barnhart,* 2002 WL 1272243, at * (10th Cir. 2001) (quoting *Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir. 1997)). In other words, "'the starting place [is] the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Id.* The determination of whether an impairment is severe at step two "is based on medical factors alone, and does not include consideration of such vocational factors as age, education, and work experience." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (internal citation and quotation omitted).

If there is medical evidence consisting of such objective evidence, such as signs, symptoms, and laboratory findings establishing an impairment, the issue then becomes whether the claimant has made "a threshold showing that his [or her] medically

4

determinable impairment or combination of impairments significantly limits his [or her] ability to do basic work activities, i.e., 'the abilities and aptitudes necessary to do most jobs.'" *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir. 1988). Basic work activities include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." *Id.* at *3; *see also Langley*, 373 F.3d at 1123.

The ALJ must carefully evaluate the medical evidence to assess how the claimant's impairment or combination of impairments impacts her ability to do basic work activities. SSR 85-28, 1985 WL 56856, at *4. The ALJ may make a finding of non-severity at step two only when the medical evidence establishes no more than a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352. Social Security Ruling 85-28 requires that the evidence "clearly establish[ ]" that the impairment is not severe. The ruling reads, in pertinent part:

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are **not** medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.

SSR 85-28, 1985 WL 56856, at *3 (emphasis added).

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do

>basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

*Id.* at *4.

At step two, the ALJ recognized a number of impairments that he deemed "medically determinable." The ALJ's list is repetitious and includes symptoms as well as medically determinable impairments. The Court has omitted the repetitious portions of the ALJ's list of impairments.

>From the claimant's amended onset date of disability of February 6, 2017, through [the] date her insured status expired on December 31, 2018, the claimant had the following medically determinable impairments: diabetes mellitus, diabetic neuropathy, obstructive sleep apnea, nocturnal hypoxemia, short sleep onset latency, short REM sleep onset latency, daytime sleepiness, snoring, trochanteric bursitis, migraines, De Quervian's disease of the left wrist, obesity, hyperlipidemia, dyslipidemia, hypothyroidism, hypertension, Vitamin D deficiency, status-post right foot peroneal tendon reconstruction and modified Brostrom, esophageal reflux. Disease, overactive bladder, multilevel degenerative changes at L3-L4 and L4-L5 with spinal canal and neuroforamina stenosis, L4-L5 and L5-S1 interspinous ligamentous strain that is compatible with interspinous bursitis, slightly heterogenous marrow signal which may be secondary to red marrow reactivation such as an anemia[.]

(TR. 21-22).

The ALJ summarized Ms. Morgan's complaints taken from her testimony, reports to doctors, and reports contained in attorney filings. (TR. 23-24). Ms. Morgan testified that her disability is the result of pain caused by neuropathy related to her uncontrolled diabetes and her spinal conditions including bursitis and stenosis. The medical records, include signs, symptoms, and objective tests demonstrating the existence of these medical conditions including her uncontrolled diabetes. (TR. 25).

Medical records from as early as 2013 substantiate Ms. Morgan's complaints of lower lumbar pain. In an emergency room visit for this pain on June 18, 2013, Dr. John

6

Marshall prescribed Lortab, Flexeril and Ibuprofen. (TR. 678). Less than a month later, Ms. Morgan endorsed troubling left arm numbness, difficulty speaking, and facial numbness. She also reported chronic daily headaches for which Dr. Sara Refai prescribed Amitriptyline, Naproxen and Hydroxzine. (TR. 624).

The next month, she complained of left leg weakness and dragging, difficulty walking, and continuing lower back pain. Dr. David Auld ordered an MRI of her spine that revealed neuroforamina stenosis and interspinous bursitis. (TR. 610).

In September 2013, Ms. Morgan established neurological care with Dr. Refai who prescribed Gabapentin for neuropathy and continued her Naproxen and Hydroxyzine. (TR. 601). In January 2014, Ms. Morgan returned to Dr. Auld complaining of leg and back pain. She stated her blood pressure and migraine headaches were well controlled. (TR. 595). She also stated, however, that her daily morning headaches as well as the shooting and burning pain in her feet continued, though the latter condition improved with her taking Gabapentin. (TR. 577).

After approximately two years, on October 30, 2017, Ms. Morgan met with Dr. Usman Bhatti again complaining of throbbing headache pain. (TR. 440). She had not filled her prescriptions for two years. (TR. 440). Ms. Morgan testified that her migraine headaches were partially controlled with medication. She also testified, however, that she still had a migraine headache once a month. (TR. 48-49).

The ALJ partially relied on the opinions of two state agency doctors who opined that there was "insufficient evidence to rate the severity" of Ms. Morgan's conditions during the relevant period between her amended onset date and the expiration of her eligibility for disability benefits. Ms. Morgan suggests that these opinions demonstrate the

need for the ALJ to further develop the record. But as the Commissioner notes, the ALJ's description of these opinions is somewhat misleading. Viewed in the context of internal social security operational guidance, these opinions actually demonstrate that there was insufficient evidence **to determine that Ms. Morgan's impairments were severe**. This interpretation is supported by the doctors' having signed off on their opinions by using POMS[1] code F2, "impairment not severe—medical evidence alone" rather than using POMS code M6, "insufficient evidence furnished." (TR. 66-67, 74-75).

Even if the Commissioner's interpretation of these agency opinions is correct, however, the ALJ arguably did neglect his duty to further develop the record. None of the medical records indicate whether Ms. Morgan's neuropathy caused by her uncontrolled diabetes, for example, resulted in functional limitations. But common-sense dictates that this pain-producing medical issue, combined with her lower back pain, would prevent Ms. Morgan from performing the full range of work. See *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (in reviewing an ALJ's decision, the court "should, indeed must, exercise common sense."). And the ALJ could easily have ordered a consultative physical examination to help determine to what degree Ms. Morgan's pain-producing impairments affect her ability to function. Although the burden to prove disability is on the claimant, a social security disability hearing is non-adversarial, and the ALJ must ensure that "an adequate record is developed during the disability hearing consistent with the issues raised." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). The ALJ's duty to develop the record is limited to "fully and fairly develop[ing] the record as to

---

[1] The Program Operational Manual System the operational reference used by SSA staff to conduct SSA's daily business. The relevant code is correctly identified by the Commissioner.

material issues" and exists even if a claimant is represented by counsel. *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997). The ALJ's duty "is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008). The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable [sic] good judgment." *Hawkins*, 113 F.3d at 1168.

Here, reasonably good judgment dictates that a consultative physical examination and a residual functional capacity determination by the consultative physician would have aided the ALJ and this reviewing Court in determining whether Ms. Morgan was able to perform work activities during the period at issue. Accordingly, the ALJ's decision is reversed and cause remanded.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES** the Commissioner's decision and **REMANDS** this case for further proceedings consistent with this Order.

ENTERED on March 30, 2022.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE